The **BALTIMORE AND OHIO CHICAGO TERMINAL RAILROAD COMPANY,** the Baltimore and Ohio Railroad Company, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Indiana Harbor Belt Railroad Company, the New York Central Railroad Company, Plaintiffs,

v.

UNITED STATES of America
and
Interstate Commerce Commission, Defendants,
and
Atchison, Topeka and Santa Fe et al., Intervening Defendants.

Civ. A. No. 65 C 609.

United States District Court
N. D. Illinois, E. D.

Feb. 20, 1967.

Donald F. Turner, Asst. Atty. Gen., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

John H. Gobel, Joseph J. Nagle, Richard J. Murphy, Chicago, Ill., for plaintiffs.

John J. Schmidt, Richard J. Schreiber, William F. Cottrell, Don McDevitt, Chicago, Ill., Robert S. Davis, St. Louis, Mo., John H. Doeringer, Chicago, Ill., J. T. Clark, Cleveland, Ohio, Kemper A. Dobbins, Roanoke, Va., James F. Schouman, Detroit, Mich., C. Harold Peterson, Minneapolis, Minn., Nygren & Holloway, John N. Kern, Chicago, Ill., for intervening defendants in support of Interstate Commerce Commission.

Memorandum of Decision

Before KILEY, Circuit Judge, and HOFFMAN and LYNCH, District Judges.

LYNCH, District Judge.

This is a suit to set aside an order of the Interstate Commerce Commission which required the cancellation of cer-

tain tariff provisions [1] which had been proposed by the plaintiffs in this action.

The plaintiffs Baltimore and Ohio Chicago Terminal and the Indiana Harbor Belt Railroad Company are switching or terminal carriers within the Chicago switching district.

The remaining three plaintiffs are line-haul or road-haul carriers whose lines connect with the Chicago Switching District. They are the Baltimore and Ohio Railroad Company, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, and the New York Central Railroad Company. These three plaintiffs control the two plaintiff switching carriers.

The current controversy revolves around the payment of so-called "mileage allowances." Owners of specified types of rail cars, usually those which are shipper-owned or shipper-controlled, are entitled to an allowance from the rail lines for all the miles their cars are used. At some districts there are bilateral agreements in force by which road-haul carriers pay the mileage allowance for the miles the cars travel over the tracks owned by the switching carriers. The Harbor Belt and the Chicago Terminal, however, have always paid the mileage allowance to the car owners on movements within the Chicago Switching District.

By schedules filed to become effective in 1963, the Harbor Belt and the Chicago Terminal proposed to cancel tariff provisions authorizing the payment of mileage allowances on certain movements within the Chicago Switching District. Simultaneously, the three road-haul plaintiffs in this action proposed to pay, when any of the three received a line-haul movement, the mileage allowance which the two terminal carriers proposed not to pay.

These tariffs became effective on February 14, 1964. Additional line-haul carriers published tariffs which became effective three days later, assuming the obligation to pay the mileage allowances on their movements through the Chicago Switching District. These tariffs were established for competitive reasons pending determination of the proceedings before the Interstate Commerce Commission.

All five plaintiffs in the action before this court were respondents in the proceeding before the ICC. The only respondent to offer any evidence, however, was the Harbor Belt.

The Commission found that the effect of the tariff schedules proposed by the plaintiffs would be to deny the payment of mileage allowances for distances private cars move over the Harbor Belt and Chicago Terminal lines, except when moving to or from these lines via the Baltimore & Ohio, New York Central or Milwaukee roads, or for intra or inter terminal switching movements.

The Commission held that the proposal of the switching carriers was in derogation of their obligation to pay mileage allowances and that this practice violated Section 1(6) of the Interstate Commerce Act (49 U.S.C. § 1(6)).[2]

---

1. The Commission report is published at 322 I.C.C. 565.

2. It is made the duty of all common carriers subject to the provisions of this chapter to establish, observe, and enforce just and reasonable classifications of property for transportation, with reference to which rates, tariffs, regulations, or practices are or may be made or prescribed and just and reasonable regulations and practices affecting classifications, rates, or tariffs, the issuance, form and substance of tickets, receipts, and bills of lading, the manner and method of presenting, marking, packing and delivering property for transportation, the facilities for transportation, the carrying of personal, sample, and excess baggage, and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property subject to the provisions of this chapter which may be necessary or proper to secure the safe and prompt receipt, handling, transportation, and delivery of property subject to the provisions of this chapter and upon just and reasonable terms, and every unjust and unreasonable classification, regulation and practice is prohibited and declared to be unlawful.

The ultimate finding of the Commission was that the proposed schedules were not shown to be just and reasonable. The schedules were ordered cancelled.

The Harbor Belt's and the Chicago Terminal's joint petition for reconsideration was denied by order of the Commission, Division 2, acting as an Appellate Division. The plaintiffs then filed this suit to set aside the Commission order. The court entered an order staying the operation of the Commission orders until hearing and determination by a statutory court composed of three judges as required by Title 28 U.S.C. Section 2284.

Intervening as defendants in support of the ICC in this action are the American Refrigerator Transit Company and ten road-haul railroads [3] that connect with the Harbor Belt and Chicago Terminal. The intervening railroad defendants are competitors of the three plaintiff connecting carriers.

The plaintiffs concede that shippers or car leasing companies that furnish freight cars used in performing transportation services are entitled to be paid a mileage allowance. They contend, however, that the Harbor Belt and Chicago Terminal need not pay these allowances if the obligation is met collectively by the railroad industry. The plaintiffs insist that competitive pressures will force other road-haul carriers to pay the mileage allowance on movements within the Chicago Switching District. In other words, the argument is that shippers owning private cars entitled to the mileage allowances would divert traffic from those carriers that refuse to compensate them for the use of these cars in the Switching District.

The plaintiffs further contend that the dispute before the Commission involved only a dispute between railroads, and that the Commission therefore erred in basing its decision on Section 1(6) of the ICC act. Baltimore and Ohio Railroad Co. v. United States, 277 U.S. 291, 300, 48 S.Ct. 520, 72 L.Ed. 885 (1928).

On the other hand, if this controversy involves more than just a dispute between the railroads, and can be said to "affect arbitrarily and unreasonably the purse of the shipper," [4] then the Commission was justified in relying on Section 1(6).

■ This court is of the opinion that the shippers are sufficiently interested in receiving their rent promptly to justify the Commission in deciding that Section 1(6) covered this case. The resolution of the controversy does affect shippers. The shippers' relationship with their lessees already had been disturbed in the three day period that elapsed between the time the plaintiffs' proposed schedules became effective and the time that additional line-haul carriers amended their tariff provisions. The Elgin, Joliet & Eastern, a connecting line-haul carrier with the Harbor Belt, did not file any protective tariff prior to the Commission hearings. Although the amount of the Elgin's mileage allowance payment would be seemingly inconsequential, its failure to respond does indicate that the logic of the petitioners' competitive pressure argument is not as inexorable as they would have this court believe. In the future it is possible there will be further disturbances. The Commission found that "the Harbor Belt's line-haul connections are opposed to pay-

---

3. Atchison, Topeka and Santa Fe Railway Company
Chicago, Burlington & Quincy Railroad Company
Chicago Great Western Railway Company
Chicago and North Western Railway Company
Chicago, Rock Island & Pacific Railroad Company
Erie-Lackawanna Railroad Company
Grand Trunk Western Railroad Company
Illinois Central Railway Company
Norfolk and Western Railway Company
Soo Line Railroad Company

4. Northern Pacific R. Co. v. United States, D.C., 41 F.Supp. 439, 443.

ing these allowances and will not agree permanently to assume their payment." If the Milwaukee Road, one of the plaintiffs in this action, should find the mileage allowances burdensome it could discontinue their payment and all of its competing carriers have indicated they then will discontinue their payments. It is conceded that the shippers have a statutory right to be paid. They should not be asked to accept in substitution of such a right a marketplace situation which may or may not have the effect of coercing the connecting railroads to pay the mileage allowance. The Commission properly found therefore that the dispute did involve the rights of shippers.

■■ Section 15(7) of the I.C.C. Act (49 U.S.C. § 15(7)) places the burden of proof on the carrier in a rate proceeding, or in a proceeding in the nature of a rate proceeding, to justify a proposed schedule as just and reasonable. This court is satisfied that the petitioners introduced no persuasive evidence and that the Commission's finding that there was no showing that the proposed schedules were just and reasonable is fully justified.

The plaintiff Harbor Belt was the only respondent before the Commission to offer any evidence. This plaintiff is owned by the Milwaukee and New York Central, but it is independently operated. Nearly 35 per cent of its overhead traffic is perishable in nature. Since perishables usually move in refrigerator cars subject to mileage allowances, the Belt presently pays no mileage allowances on a large part of its traffic. From 1921 through 1958 the Harbor Belt operated at a profit in all but three years. From 1959 through 1962, the period considered by the Commission, the Belt lost more than $5,000,-000.

■ This deficit was not sufficient justification to cancel the tariff inasmuch as the Commission found that this deficit was not attributable to the payment of the mileage rent, but reflected the Harbor Belt's overall operation.

Nor can the tariffs be justified on the grounds that line-haul carriers have assumed the payment of mileage allowances for switching lines at terminals in Kansas City, St. Louis, Peoria, and Cincinnati. In those areas the railroads entered into voluntary agreements. Here all connecting railroads—with the exception of the three road-haul plaintiffs who would not be put in a different position by absorbing the mileage allowances[5]—are objecting to the proposal.

In summary, it is the opinion of the court that the Commission did not err in applying Section 1(6) under the circumstances present in this case; and on the question of fact the record justified the finding that petitioners had not shouldered their burden to show the tariffs are just and reasonable.

5. Mr. Sullivan, representing the Harbor Belt, the only plaintiff which appeared and introduced evidence before the I.C.C., responded to questions on cross-examination as follows: (Page 49 of the transcript of the Commission proceedings.)

Q. (By Mr. Sheil) Those three roads you just mentioned—the B & O, New York Central, and the Milwaukee, they are owners or part owners of the respondent in this case?

A. No: the B & O is not a part owner of IHB.

Q. But it is of the B & OCT?

A. It is of the B & OCT.

Q. Then, in effect, by absorbing this car mileage allowance, these roads are in no different position?

A. That is probably true.